Good morning. Sean Kajan. I represent the defendant appellant in this case. I've read the four cases the panel instructed the parties to consider in preparation for the argument. Two of them, the Supreme Court case place and the Ninth Circuit case, I think support reversal in this case. The two out-of-circuit cases, the Orsolini case and the Sanchez case, while at first blush may appear to not support the defendant, I think once the first few paragraphs of each of those cases are read, we see significant factual differences between those two cases and defendant passenger appellant in this case. The Orsolini case, for example, unlike the defendant's case here, Orsolini was pulled over because there was a speeding violation. There was suspicious clothing found in the back of the car. The statements made by the passengers in the car to the Tennessee officer made no sense. They'd been traveling from California to Boston, yet apparently had not stopped to change clothes or stopped to eat. And so unlike here, there's nothing like that. The defendant in this case, they were in the recreational area, the Buttercup campgrounds in Imperial Valley, which is permitted. The sheriff there, the evidence in the record is that the sheriff allowed and permitted recreational activity, even in the summer months. And then they were pulled over. There was no speeding violation. There was no trying to flee the officers in any way. The car was not riding low of any kind. They pulled over immediately. They were asked for their immigration status. They said they were U.S. citizens. They asked for the officer asked for I.D. They provided I.D. The officer inspected the I.D. Everything checked out. The officers then asked the defendant, the driver of the vehicle, Mr. Ortiz, whether he consented to the search of the vehicle. Mr. Ortiz, as is his right, denied consent. In response to the denial of consent, which I think this panel in Fuentes has indicated or has stated that a refusal to consent is not supportive of reasonable suspicion. But despite that, despite his lawful refusal to consent, the officer instructed passenger Macias, my client, to get out of the vehicle, place his hands behind his back, and sit at the curbside. And at the same time instructed the defendant, sorry, the driver to do the same.  Kagan. If we thought that you're now discussing the question of whether the stop was valid, right? True. And if the stop was not valid, your client as the passenger would be able to suppress the ensuing search. True. Right? But suppose we didn't think the stop was invalid, but we thought that the length of the detention was questionable or invalid. Would that help your client at all under this Court's case law, like Pulliam and so on? I'm trying to see where the pieces fit together here. Ultimately, what you want to do is suppress the evidence, right? Correct. And certainly reverse his conviction, suppress the evidence, and then also dismiss the indictment. Okay. So which of your arguments would lead to suppression of the evidence? Well, even if there was reasonable suspicion to initially pull over the vehicle. Right. Once pulled over, the case law is that the detention can only last as long to investigate the scope of the initial stop. That's true. But we also have somewhat peculiar case law that seems to say that the passenger at that point, even if the detention is too lengthy, doesn't have a privacy interest in the car sufficient for a search. To protest the search. Well, when the passenger is being investigated and he's answering every question correctly and not suspiciously, and there's nothing in the record to indicate any objective, articulable facts to support suspicion, and then he is instructed to get out of the car, he's not instructed that he's free to leave, unlike the case. Yeah. I'm assuming all of that. I'm assuming. Let's assume for present purposes that the detention, the 45-minute detention to wait for the dog in 114 degree heat was an unconstitutionally long detention. That would be a seizure. Okay. That would be an arrest without probable cause. Okay. But how does that help you with regard to the search of the car? If it's an arrest without probable cause, then that would then be, I think certainly the indictment needs to be dismissed at that point because his arrest was without probable cause. Yeah, but then they just arrest him again. That's not going to get you any place. So. Well, in addition, I understand what Your Honor is getting at. And I think that if his arrest is without probable cause, then any fruit of that arrest needs to be suppressed. But why is that a fruit? I mean, the problem in what respect – that's right, too, in the case law. But the case law is very specific and peculiar about this. And as I understand the facts, there's nothing that happened during that hypothetically too long detention that led to the search. Other than, of course, the fact that they were – the detention was prolonged for the purpose of calling over a dog.  But there's nothing he said or did. There's no sense in which it's a fruit. Why was it a fruit? Well, the fruit – respectfully, I would think that the fruit would be the officer's continued – well, not – I shouldn't say attempts, but the officer's continued calling over for the – that's not the right language. The fruit would be that the officer's bringing over the canine which lasted too long. But he didn't have to be there. Your guy could have been long gone and that search would have been exactly the same. There's nothing he said or did during that detention that increased their – their reasonable suspicion of probable cause or in any way influenced the search, right? Your Honor, the case said he could have left, but he certainly could not have left. I just think that given the case laws, which I don't particularly agree, I don't see how you get to suppress it except on the stop. Well, how about – let's think of it this way. If we all agree that he has standing – if the passenger has standing to object to the initial stop, how could it – Then he does and then he can't. And my understanding of the case law is then he can't object to the – then he can't suppress the evidence. And so it wouldn't make much sense if he has standing to object to the initial stop and then bust. And then if the stop is simple – And that's what Judge Wargler said in dissent in the Pulliam case. It doesn't make any sense. Pulliam left the question open, as I understand Pulliam. It says, Pulliam did not argue that the detention of the car constitutes the fact of seizure of the person. Then it goes on for a while and says, We therefore need not decide whether such an argument might have enabled Pulliam to challenge the evidence derived from the car's illegal detention. So Pulliam specifically leaves open whether if he had challenged the detention because he was held – because it was a de facto seizure of the passenger, then whether that gives the right to the passenger to challenge the seizure of the evidence in the car. Now, I would have thought that that question should have been easy to answer in the passenger's favor. But Judge Wallace left the question open and Judge Wardlaw made it clear that she thought the passenger should be able to. But Judge Wallace left it open only because the passenger did not make that challenge, which you are now making. Absolutely. Again, I would think that it makes no sense that if the passenger is able to object to the initial stop and then somehow there's – but then not be able to object later to the illegally obtained fruits of that stop. And then, of course, what we're articulating, what I'm articulating, is the prolonged detention that follows the initial stop. The other case, the other out-of-circuit case, which initially, at first blush, goes against the defendant, I think also supports reversal here. The Sanchez case, the defendant passenger in Sanchez provided a fake ID, and also there were inconsistencies in the statements made between the driver as well as the passenger, yet there's no such evidence in this case, meaning there's no such evidence that indicates any articulable, objective, suspicious facts that arose after the stop to support a prolonged detention. And moreover, in this case, Agent Rios handed back the ID and the paperwork to the driver and to the passenger and indicated that everything seemed to be in order. And then it's only after that that he instructed both to get out of the car, sit on the curb in 114-degree heat, and for no apparent reason, certainly he didn't articulate any reason, and nor is any reason given here other than waiting for the judge. But here you did have a – I mean, his reason was that U.S. citizens are not U.S. citizens. There was a set of fairly peculiar events going on here. You had these three cars, three trucks all together. There were little vehicles resulting from them. There were people with binoculars or a person with binoculars. It was an area, apparently, where people were not likely to be at 114 degrees in the summer just for fun. I think the evidence cuts against that. First off, the notion that the area is notorious for activity. I think Sigmund Biasteros, this Court's case, indicates that that's of minimal importance, especially in this particular case. Kagan. What's of minimal importance? Well, especially in this particular case. What is of minimal importance? The notion that the factor that of – to look at the area of being high smuggling activity is not of – is not alone a factor that supports reasonable suspicions of minimal importance. I'm afraid we're going to have to end your portion of this. We'll give you a minute or two for rebuttal. Thank you. But we have to stick with the time for the rest of the calendar. Thank you. Thank you. Stewart. Good morning, Your Honors. Stewart Young for the appellee, United States of America. I think there's a couple different distinctions that need to be made, especially with some of the cases that the appellant has already discussed. My question for you is how do you know that 45 minutes is a reasonable time to get a dog without knowing where the dogs are located, without having any information in the record as to why it took 45 minutes? That's a fair question, Your Honor. I think part of the analysis is whether 45 minutes absolutely is reasonable or not. And I think the case law is pretty clear that it's not unreasonable. And what we have in place at this point is a reasonable time. It's not unreasonable depending on the circumstances. I mean, we have to know what was the cause of the delay, do we not? That's correct, Your Honor. In the 190 minutes. What is there in the record to indicate what the cause of the delay was?  Your Honor. I think it's clear both from the district court's understanding of that area. This is far away from San Diego. It's also far from El Centro. Those are generally the two areas where the dog would have been. Now, if the dog had been on site, clearly those factors might have weighed more in favor of this being unreasonable. But I think $191,000 in currency makes it clear there's an absolute and then also a context-specific analysis. Now, none of that, you know, Judge Minor may come from New York, Judge Brizan may come from San Francisco. I come from Los Angeles. Nobody comes from San Diego. How are we supposed to look at the record and know how far any of these places are from where this arrest took place? Unfortunately, Your Honor, that is not in the record. The ---- Well, isn't it the government's burden to show whether it's reasonable or not? Well, it is, Your Honor. It's also these facts are also looked at for clear error by the district court. The district court didn't have any information either, so that's not very helpful. Well, but the district court did say that those 45 minutes were reasonable. Well, he didn't. I mean, 45 minutes is, under the case law, at least marginal. Well, generally, I mean, in Bloomfield, in the Eighth Circuit, one hour is reasonable. All right. Well, we're not in the Eighth Circuit, but also I said marginal. I didn't say per se no good, but marginal. True. And I think part of what is important to look at is both the absolute and then the context-specific. The absolute, it's not out of the ordinary. It's not out of the ordinary. It's out of the ordinary. It may be justified by some unusual circumstances, but it's out of the ordinary, it seems to me. Especially, and it doesn't seem to me that the heat and the location is irrelevant either, because these people were not only delayed for a long time, but vastly uncomfortable during that time, and also were ---- had no way to get out of there other than this car that they were in, I gather, in this very rural neighborhood area. So there are other circumstances as well that go to the reasonability, and we don't have any evidence about the time. That is correct, Your Honor. I do concede that there is no indication as to where the dog was. Do we know that the dog went to the other car first? Do we know that? Again, we are ---- we don't know that. We don't even know if it's the same dog or anything else. We ---- I believe it was the same dog, but I can't point to anything. We don't know which was first. I can't point to anything in the record, Your Honor, about that. I think it's clear that in case ---- in other cases where dogs were on site or were much more available, including the place case, the currency case, especially in the airport context. But here we're a mile from the Mexican border, right? Presumably the Federal Government, I hope, and I understand, is spending a lot of time trying to intercept people coming across the Mexican border in this particular area. That's what ---- that's your argument? What stops no good? So if that's what they're doing, they presumably have some means to do the invest ---- they ought to have some available means to do the investigations they need to do in that area. I think also, though, you're arguing about the heat cuts a little bit against having the dog on site in 114-degree weather. I mean, I think that would be animal cruelty. Now, generally ---- Feeble cruelty. Okay, for the feeble, but not for the dogs. Well, I'm glad you're a dog lover. What about my concern about the circumstances under which if we were to say to remand this case and there was to be a hearing as to the reasonableness of the time period, could that lead to the suppression of the evidence here? Your Honor, I don't believe it. I don't believe it would. I think the district court already said, based on the facts that was in front of it, that there was a reasonable time. That's not what I'm asking you. I'm asking you the fact that this person was the passenger and not the driver. And on the other hand, this was in an area in which it's at least plausible to say that seizing the car is seizing the person because there's absolutely no way for him to get out of there. So do we just leave that open on a remand as well and see where it goes? Or is a pull-in precluded or what? Well, Your Honor, first, I hope there isn't a remand. But if there is, I would ---- I think under pull-in, it does appear to be an open question. And it's clear, at least under pull-in, that as Your Honor pointed out to appellant, that none of the statements made during that detention actually led to the actual finding of the person. Your Honor, as far as I can tell, there were no statements made other than on a U.S. citizen. Exactly, Your Honor. But the passenger was also charged with possession with intent to distribute. So the charge against him ended up the same. And so wouldn't his detention and the length of his detention factor into that? Well, Your Honor, I believe that might, but I don't believe that the actual length of detention actually resulted in the discovery of the marijuana. Now, again ---- Well, why did they detain him? They detained him, as you argue, pending the arrival of dogs to do sniffing because they wouldn't consent. Maybe you were just sweating them out in the sun. Well, if they were sweating them out in the sun, they actually didn't make any statements to that effect. Well, sometimes it doesn't work, does it? That's true, Your Honor. If I may speak to pull-in, I think partly the difference between this case and pull-in is pull-in is actually a traffic stop for a traffic violation, whereas this case, it's actually an investigatory stop. Now, the investigatory stop is only to be prolonged as long as it can, as the agents can distinguish whether their reasonable suspicion was correct or not. So they're investigating the driver as well as the passenger. That is true, Your Honor. So I think from that standpoint, I believe the passenger would have standing to challenge both the initial stop of the vehicle as well as the detention of that vehicle. But again, this was left as an open question by pull-in because pull-in had not actually challenged ---- I know it's left by an open question by the district court because the district court didn't think there was an unreasonable detention. That's correct, Your Honor. Thank you. Now, in terms of ---- I mean, I want to make it clear. There's a difference between the traffic stops for traffic violations and investigatory stops. And it seems at least ---- it seems pretty clear that the agents were not just waiting around trying to sweat these people out. They called for the narcotic detector dog. Do we even know that? We don't know nothing. We don't know. For all we know from the record, they could have called for the narcotics dog two minutes before it arrived, right? Your Honor, that was not developed either by defense counsel. Right. So we don't even know that. That is correct, Your Honor. And I would argue, at least under the absolute, absolute ---- rather than the context specific looking at the factors, but the absolute factors, this is at least reasonable under the case law, both Bloomfield, Alpert, Sanchez and Orsolini. Ultimately, your position is that unless we say that 45 minutes is per se okay, we don't have the facts to really decide this. I mean, that has to be your position because, I mean, you have to be arguing that 45 minutes is just per se okay because we don't know anything about the underlying circumstance. Unfortunately, based on that record, that would be correct, Your Honor. My personal experience having actually been to the Buttercup campground might be a little bit different. But according to the record, absolutely. All right. Thank you very much, counsel. Thank you very much. You have one minute. Absolutely. I will keep it short. Your Honor is correct. It is the government's burden to support the existence of any exception to the Fourth Amendment requiring a warrant or by preponderance of the evidence, United States v. Jeffers, 342 U.S. 48 from 1951. And that law hasn't changed, of course. The United States here yet is true, but I hope it doesn't change, certainly. The United States has not, neither in the district court nor here could even proffer or more importantly, there's nothing in the record to support an exception to the Fourth Amendment in this case. There's no reasonable suspicion to stop the car. There was no reasonable suspicion or probable cause to prolong the detention and seize Mr. Macias. And further, there was no probable cause to arrest him even when, and I know we haven't discussed it much, to, based on the mere presence doctrine, to arrest him even when the marijuana was found. There's nothing connecting him. Other, I realize that there's a substantial quantity of marijuana, but there's, unlike the other cases that the Ninth Circuit has decided, there are no suspicious means of the ownership of the car. But weren't those cases merits cases in which the question was sufficiency of the evidence for conviction beyond a reasonable doubt as opposed to probable cause? That's true. That's true. Thank you. Thank you. Thank you. Okay. The case to be started will be submitted. The next case on the calendar is United States v. Aviar-Ceja.
judges: Reinhardt, Berzon, Miner